662 A.2d 1131

COMMONWEALTH of Pennsylvania, Appellant,

v.

Joseph ROSENFELT, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 26, 1995.

Filed July 11, 1995.

Reargument Denied Sept. 8, 1995.

618

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Stuart Lev, Asst. Public Defender, Philadelphia, for appellee.

Before: WIEAND, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

The Commonwealth appeals an order, entered in the Philadelphia County Court of Common Pleas, suppressing evidence of illegal drug activity seized by Commonwealth Parole Officer Donna Henry from an automobile trunk belonging to Joseph

Rosenfelt. This case asks us to answer three distinct but interrelated questions: (1) If a parole officer has probable cause, can she conduct a warrantless search of the car trunk of parolee's automobile for suspected evidence of criminal activity and/or contraband? (2) Did the parole officer have probable cause to search the car trunk? (3) Is such a search permissible under Article 1, Section 8 of the Pennsylvania Constitution?

At the time of his arrest, Rosenfelt was on parole for robbery. On November 16, 1992, he attended a regularly scheduled interview with Henry, his parole officer. Henry knew that Rosenfelt had been driving without a license, which is a parole violation. N.T. 9/20/93 at 8, 45. When Henry asked Rosenfelt if he had remedied this situation, he replied that he would take care of it the next day. *Id.* at 10.

Henry, suspecting that Rosenfelt had driven himself to the meeting, decided to investigate by following Rosenfelt out of the building when he left the interview. *Id.* at 10–11, 45. She watched as Rosenfelt entered a red Thunderbird, got behind the wheel, and drove away. *Id.* at 12, 45. Along with Parole Officers Barringer and Healey, Henry followed Rosenfelt in another vehicle. When Rosenfelt stopped at a red light, the parole officers jumped out of their car and took Rosenfelt into custody. *Id.* at 13, 45–46.

Rosenfelt was taken back to the parole office in the officers' vehicle, while Barringer drove the Thunderbird. *Id.* at 13, 46. While driving, Barringer noticed inside the car, in plain view, the following: a fifty-dollar bill, two four-inch spoons with white powder residue on them, a syringe, and a box of confectioner's sugar wrapped in a brown paper bag. *Id.* at 15, 46. Barringer reported his discovery to Henry, who then proceeded to take the car keys and open the trunk to the Thunderbird. *Id.* Inside were two bags containing a scale, glassine envelopes, a beeper, pills, and what appeared to Henry to be "a nice quantity of some type of illegal substance." *Id.* at 19; suppression court opinion 10/11/94 at 3. A test performed on the discovered illegal substance revealed it to be fifteen grams of amphetamine, with a street value of

$1,050.00. Criminal complaint 11/17/92; arrest report 11/17/92.

Rosenfelt was arrested for knowingly or intentionally possessing a controlled substance,[1] manufacture, delivery or possession with intent to manufacture or deliver a controlled substance,[2] and possession of drug paraphernalia.[3] His motion to suppress the physical evidence found in the trunk of the car was granted by the Honorable John J. Chiovero. In support of his ruling, Judge Chiovero opined that the Fourth Amendment of the United States Constitution and Article 1, Section 8, of the Pennsylvania Constitution prohibited the warrantless search of Rosenfelt's vehicle, as it was based only upon reasonable suspicion, and occurred without the parolee's consent or statutory or regulatory guidelines governing such searches. N.T. 9/20/93 at 66–67; Opinion 10/11/94 at 4. Additionally, Judge Chiovero held that Henry lacked the training or expertise necessary in narcotics investigations, as well as any general police authority, that would have allowed her to search the trunk based upon probable cause. *Id.* at 5. The Commonwealth now appeals.[4]

Our standard for reviewing the suppression of evidence is firmly established. .

> Where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Robinson,* 518 Pa. 156, 159–160, 541 A.2d 1387, 1389 (1988), citing, *Commonwealth v. Hamlin,* 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). If the evidence supports the court's factual findings, we are bound by such findings

1. 35 P.S. § 780–113(a)(16).

2. 35 P.S. § 780–113(a)(30).

3. 35 P.S. § 780–113(a)(32).

4. Herein, the Commonwealth has certified that the suppression order substantially handicaps its case, making its appeal amenable to review by this Court. *Commonwealth v. Pleummer,* 421 Pa.Super. 51, 52, 617 A.2d 718, 719 n. 1, *allocatur denied,* 536 Pa. 622, 637 A.2d 282 (1993).

and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427 (1986).

*Commonwealth v. Robinson*, 438 Pa.Super. 119, 123, 651 A.2d 1121, 1123 (1994) (quoting *Commonwealth v. Smith*, 396 Pa.Super. 6, 8, 577 A.2d 1387, 1388 (1990)).

Officer Henry testified that she was aware Rosenfelt had eleven prior drug arrests and had tested positively for methamphetamines in his blood stream during occasional urinalysis tests administered while he was on parole. N.T. 9/20/93 at 52–53. Moreover, she stated that the items found inside the car's passenger compartment "appeared to be drug paraphernalia." *Id.* at 46. Despite her testimony, the suppression court concluded that Henry did not have probable cause to open the trunk.

Before deciding whether Henry had probable cause to investigate the trunk, we must first decide whether or not Rosenfelt's status as a parolee meant that he had a diminished expectation of privacy. If so, Henry could have proceeded in her investigation even if she only had reasonable suspicion of illegal drug activity afoot or of contraband being present, a less demanding requirement than if probable cause to search were the applicable constitutional prerequisite.[5]

5. *See Commonwealth v. Talley*, 430 Pa.Super. 351, 355–57, 634 A.2d 640, 643 (1993) (stating that the standard requiring articulable suspicion in order to engage in a "stop and frisk" is a less demanding requisite than that which allows for warrantless searches based upon probable cause); *see also Commonwealth v. Johnson*, 429 Pa.Super. 158, 164–66, 631 A.2d 1335, 1339 (1993) ("[R]easonable suspicion [is] less than probable cause. . . ."); *cf. Commonwealth v. McCandless*, 538 Pa. 286, 288–90, 648 A.2d 309, 311 (1994) (holding that where a statute required probable cause, inter-jurisdictional pursuit was impermissible if based only upon mere suspicion); *accord, id.* at 290–92, 648 A.2d at 312 (Castille, J., dissenting) (stating that reasonable suspicion could ripen into probable cause).

When used to refer to a belief that the Vehicle Code has been violated, we have held that the terms "probable cause" and "articulable and reasonable grounds to suspect," as well as "reasonable suspicion to believe," are interchangeable. *Commonwealth v. McElroy*, 428 Pa.Super. 69, 75, 630 A.2d 35, 38–39 (1993) (*en banc* ) (holding "articulable and reasonable grounds to suspect" to be the preferred standard). This should not be confused with use of the term "probable cause" when

**I**

The Commonwealth initially argues that Henry's authority to search Rosenfelt's car is fully supported by statute. *See* 61 P.S. § 331.27.[6] Rosenfelt responds that this case is controlled by the Pennsylvania Supreme Court's holding in *Commonwealth v. Pickron*, 535 Pa. 241, 634 A.2d 1093 (1993), and our subsequent analysis of *Pickron* in *Commonwealth v. Alexander*, 436 Pa.Super. 335, 647 A.2d 935 (1994). Appellee's brief at 12–14.

*Pickron* clearly established that section 331.27 of the statute regulating penal and correctional institutions does not give parole agents carte blanche authority when investigating parolees. In *Pickron*, two parole agents went to a parolee's house with an arrest warrant issued for her failure to report to the State Board of Parole. *Pickron*, 535 Pa. at 242–43, 634 A.2d at 1094. They were admitted into the house by parolee's mother for the limited purpose of searching for the daughter. *Id.* After observing some quinine, a cutting agent for heroin, the agents expanded their search to look for drugs. We held that this search was permissible, as the parole officers were properly ascertaining whether or not the parolee had been engaging in illegal drug activities. *Commonwealth v. Edwards*, 400 Pa.Super. 197, 206–07, 583 A.2d 445, 450 (1990). The Pennsylvania Supreme Court reversed, holding that "the [F]ourth [A]mendment prohibits the warrantless search of probationers (sic) or parolee's residences based upon reasonable suspicion without the consent of the owner or without a statutory or regulatory framework governing the search."

used to refer to an arrest or search, however. *Id.* at 75, 630 A.2d at 38. ("'[P]robable cause' ... usually denotes a higher level of knowledge by the police of an illegal act....").

6. 61 P.S. § 331.27 **Parole officers as peace officers; powers**

Parole officers appointed by the board are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer under supervision of the board for failing to report as required by the terms of his probation or parole, or for any other violation thereof.

*Pickron,* 535 Pa. at 249–50, 634 A.2d at 1098 (footnote omitted).

In issuing its decision, our Supreme Court specifically examined the Fourth Amendment as it applies to parolees. *Id.* at 243–45, 634 A.2d at 1095. The court agreed that a parolee's Fourth Amendment rights are limited. *Id.* They are not abrogated, however, simply by nature of the parolee's status. *Alexander,* 436 Pa.Super. at 338–40, 647 A.2d at 937.

■ The Supreme Court stated that, absent systemic procedural guidelines mandated by statute or regulation, there would be no safeguards protecting a parolee's Fourth Amendment rights. *Pickron,* 535 Pa. at 249–51, 634 A.2d at 1098. Subsequently, we held that *Pickron* would apply whether or not the parole agents acted as "stalking horses" for the police, engaging in general police investigations, or whether the parole officers were looking specifically for evidence of a parole violation. *Alexander,* 436 Pa.Super. at 340–42, 647 A.2d at 938. Reasonable suspicion is not enough to uphold a warrantless search of a parolee's premises.

The Commonwealth claims that *Pickron* does not apply because the questioned search was of Rosenfelt's car and not his home, and Henry had more than reasonable suspicion, that is, probable cause, to search the trunk. *Pickron,* it is argued, is only applicable where a search is conducted by a parole officer based upon his or her reasonable suspicion that criminal activity is afoot or that contraband is present. We agree.

■ *Pickron* stands for the proposition that without a prior agreement, or specific guidance from statute or regulation, a parolee's protection from an unreasonable search and seizure is no less than that afforded any other Commonwealth resident.[7] It does not mean, however, that *Pickron* would extend

7. As we stated in *Alexander,* "since the *Pickron* decision there has not been passage or promulgation of a statute or regulation authorizing warrantless searches of parolee's premises or setting forth the framework of when such a search can be conducted." 436 Pa.Super. at 340, 647 A.2d at 937. Henry testified that parole policy gave her authority to search the car without a warrant. N.T. 9/20/93 at 32. We do not

to parolees greater constitutional guarantees.[8]

## II

Because *Pickron* is inapposite where the parole officer has probable cause to search parolee's automobile, we next must decide whether Henry did indeed have probable cause to believe that the trunk of the car contained drugs and drug paraphernalia. The suppression court said that she did not. Judge Chiovero based his ruling on the fact that "the 'parole officer' did not have the expertise or general police authority" that would have enabled her to conduct a constitutionally permissible search. Suppression court opinion 10/11/94 at 5. We disagree.

Section 27 of the Probation and Parole Act, Act of August 6, 1941, P.L. 861, § 27, 61 P.S. § 331.27, states that parole officers are police officers with "police power and authority throughout the Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer ... for any violation [of parole]." 61 P.S. § 331.27. Prior to *Pickron*, we had held that a parolee, whose reasonable expectations of privacy is diminished as a consequence of her status, must endure warrantless searches based upon reasonable suspicion that she had committed a parole violation. *See* Peter J. Gardner, Comment, *Arrest and Search Powers of Special Police in Pennsylvania: Do Your Constitutional Rights Change Depending on the Officer's Uniform?*, 59 Temple L.Q. 497, 532–534 (1986). We know of no authority, however, that would read 61 P.S. § 331.27 as *per se* denying parole officers the right to conduct warrantless searches.[9]

know what this policy is or what it entails, nor does the Commonwealth refer us to any of the pertinent provisions of such a policy.

**8.** Because we hold that the parole officer had probable cause to conduct a search, we leave unanswered the question of whether a parolee's expectation of privacy regarding an automobile is less than the extant citizenry. *See infra* § II.

**9.** In *Pickron*, Justice Papadakos, dissenting in part, cited 61 P.S. § 331.27 for the proposition that parole officers have the general authority to conduct warrantless searches of a parolee's residence based upon mere reasonable suspicion. Clearly, this view was rejected

"[P]robable cause is a flexible, common-sense standard." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502, 514 (1983); *e.g., Commonwealth v. Mallory*, 418 Pa.Super. 614, 616, 614 A.2d 1174, 1176 (1992), *allocatur denied*, 533 Pa. 632, 621 A.2d 578 (1993). "As indicated in the seminal case in this area, *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), probable cause is a fluid concept which turns on the assessment of probabilities in a particular factual context." *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 87, 630 A.2d 42, 45 (1993) (citation omitted). Our analysis is pragmatic, common-sense, and non-technical. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1890–91, *reh. denied*, 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949); *Commonwealth v. Quiles*, 422 Pa.Super. 153, 166–68, 619 A.2d 291, 298 (1993) (*en banc* ); *Commonwealth v. Bailey*, 376 Pa.Super. 291, 298–300, 545 A.2d 942, 946 (1988), *allocatur denied*, 521 Pa. 609, 557 A.2d 341 (1989). "Probable cause exists if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime." *Quiles*, 422 Pa.Super. at 166–67, 619 A.2d at 298 (citations omitted).

■ Parole Officer Barringer observed a syringe and two small spoons with white powder, along with a box of sugar in a paper bag. Sadly, it is no longer the case that citizens need special training to be able to identify the combination of these items as a hallmark of drug activity. Unfortunately, drugs are ubiquitous in America. Bill Brashler, *If America Can't Solve Its Drug Problem, It May Have to Listen to Wayne Wiebel*, Chicago Tribune Sunday Magazine, Sept. 4, 1994, at 8 (stating that cocaine abuse is at epidemic proportions and heroin abuse is on the rise). Specialized training may be required to identify certain indicia of drug activity. *See id.,*

by our Supreme Court. That the Supreme Court did not adopt Justice Papadakos' dissent does not mean, however, that this section of the statute on penal and correctional institutions leaves parole officers without any authority to conduct a warrantless search.

(quoting a social worker who states that heroin abuse may be difficult to spot in the workplace); Marsha Kay Seff, *Recognizing Drug Activity and What to Do About It*, The San Diego Union Tribune, Sept. 25, 1994, at H9 (stating that seeing your neighbors frequently host a variety of guests who upon leaving remain in their cars for brief intervals may be a sign of drug activity); Tom Callahan, *Do's and Don'ts of a Vehicle Drug Search*, N.Y. Times, March 27, 1994, § 13WC, at 19 (describing how police are trained to search for specially designed hidden compartments installed in cars to secrete drugs). Certain telltale signs of illicit drug activity, however, are easily spotted by the average citizen, even without special training. *See* Elaine D'Aurizio, *Cops Seek Suspect in Limo Drug Incident; Woman Fled after Allegedly Using Heroin*, The Record (Bergen, New Jersey), April 5, 1995, at C05 (reporting how limousine driver told passenger who was using a hypodermic needle in the back seat that he didn't allow such activities in his car); Robert White, *THE TOWNS: More than Just Litter*, Newsday (Long Island), Nov. 3, 1994, at A31 (describing how civic leaders, in effort to clean up park, view discarded hypodermic needles and small vials as evidence of illegal drug activity); Seff, *supra* ("Some items are as obvious [of drug use] as used hypodermic needles...."); *Drug Testing: And Whose Syringe Might This Be?*, Inc., August 1994, at 104 (reporting incident where plant cleaning crew confronted management with syringes, razor blades, and plastic bags to see if the company knew what was taking place at the factory).

Often our case law describes a police officer's special training in order to buttress the court's view that probable cause was extant in a questioned search and seizure situation. *Bailey, supra*, which Judge Chiovero cited to support his holding that Henry lacked the requisite narcotics training to recognize the found items as indicia of drug use, is just such a case. In *Bailey*, we said that the police officer who conducted the warrantless search in that case had sufficient training to enable him to recognize controlled substances. *Id.* at 298–300, 545 A.2d at 946. The officer's belief that contraband was

located in the target vehicle constituted probable cause to search. *Id.*

There seems to be some confusion in this area, because courts often rely upon a police officer's special training when holding that she had probable cause to search. These are often situations where the average citizen would not have had the expertise to similarly recognize drug activity. *See, e.g., Robinson,* 438 Pa.Super. at 123–27, 651 A.2d at 1124–25 (stating that in determining probable cause, courts should take into account the experience and expertise of the officer); *Commonwealth v. Kendrick,* 340 Pa.Super. 563, 569–71, 490 A.2d 923, 927 (1985) ("[I]t is important to focus on the circumstances as seen through the eyes of a trained officer and not to view the situation as an average citizen might.") This does not mean, however, that when the circumstances require no special education for an officer to believe that criminal activity is afoot, the Commonwealth must still support its showing of probable cause by placing into evidence the officer's training and background. *Cf. Robinson,* 438 Pa.Super. at 123–27, 651 A.2d at 1124–25 (stating that we should not measure a police officer's actions "by what might be probable cause to an untrained civilian." (quoting W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* 570–71 (2d ed. 1987)). If an officer stopped a car driving from the general direction of a recently looted electronics store, and that car was jammed from rocker panel to rooftop with stereos, would we inquire as to the officer's training in investigating burglaries and robberies?

■ We do not conclude, therefore, that a government officer has to have specialized training in narcotics investigation for her to have probable cause to search for drugs in every instance where she confronts possible signs of drug activity. If the discovered items or observed activity does not easily reveal drug activity to the average citizen, then we would need to rely upon an officer's specialized training in narcotics investigations before we would hold that her observations amounted to probable cause to search. Where the discovered objects and/or reported behavior are obvious indi-

cators of drug activity to anyone in the community, we hold that the government officer does not need special training in narcotics investigation for her to have probable cause to initiate a search.

 In this situation, Henry and Barringer noticed the drug paraphernalia in plain view.[10] While there may be other explanations for Rosenfelt's possession of these items, probable cause, as the term implies, only requires us to look at probabilities, not certainties. *Bailey,* 376 Pa.Super. at 298–300, 545 A.2d at 946. Henry knew Rosenfelt's prior involvement with drugs. N.T. 9/20/93 at 53. She, as a parole officer with general police powers, is presumed to know and recognize violations of the criminal code as well as the Controlled Substance, Drug, Device and Cosmetic Act. Possession with intent to use drug paraphernalia is a violation of the latter. 35 P.S. § 780–113(a)(32). Hypodermic syringes have been specifically included in the act as prohibited drug paraphernalia. 35 P.S. § 780–102(b) **"Drug paraphernalia"** (11). In determining probable cause, we look to the totality of the circumstances. *Quiles,* 422 Pa.Super. at 166–68, 619 A.2d at 298. "[It] exists when criminality is one reasonable inference; it need not be the only, or even most likely, inference." *Id.* Under this standard, Henry clearly had probable cause to believe that drugs were hidden elsewhere in the car.[11]

**10.** Judge Chiovero held that "[t]here was probable cause to search the interior of the automobile and cease (sic) the contraband found within as they were all within plain view." N.T. 9/29/93 at 66. For the plain view doctrine to be operative, "the incriminating character of the object [must be] immediately apparent." *Commonwealth v. Grimes,* 436 Pa.Super. 535, 542, 648 A.2d 538, 542 (1994) (citations omitted). It is inconsistent to state that the criminal nature of the paraphernalia was obvious enough for Henry to seize the items, but too opaque to allow further investigation.

**11.** Having probable cause to search the car's interior would mean that Henry also had probable cause to search the trunk. "[I]f a police officer possesses probable cause to search a motor vehicle, he may then conduct a search of the trunk compartment without seeking to obtain probable cause relative to the particularized area." *Bailey,* 376 Pa.Super. at 296, 545 A.2d at 944; *see also Commonwealth v. Elliot,* 416 Pa.Super. 499, 611 A.2d 727 (1992), *allocatur denied,* 534 Pa. 646, 627 A.2d 177 (1993).

## III

The fact that Henry had probable cause to believe that contraband was present in the trunk does not necessarily mean that a warrantless search was constitutionally permissible. Rosenfelt agrees that under recent Supreme Court analysis of the Fourth Amendment, Henry had the right to search the trunk. Appellee's brief at 16 (citing *California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), and *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). Instead, Rosenfelt claims that this search was prohibited under Article 1, Section 8 of the Pennsylvania Constitution.[12]

## A

The Commonwealth states that Rosenfelt did not make this argument to the trial court at the suppression hearing, and is thus precluded from doing so now. Specifically, the District Attorney's office claims that Rosenfelt failed to meet the requirements for arguing a case of first impression that raises an issue implicating the Pennsylvania Constitution, as set forth in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). In *Edmunds,* our Supreme Court held that "certain factors [must] be briefed and analyzed by litigants in each case ... implicating a provision of the Pennsylvania constitution." *Id.* at 390, 586 A.2d at 895 (footnote omitted). At minimum, these include the

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case law;

3) related case law from other states;

12. Article 1, Section 8 of the Pennsylvania Constitution states in whole:
**Security from searches and seizures**
The people shall be secure in their persons, houses, papers and professions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.*

First, appellee does not waive a claim just because it was less than artfully, although successfully, argued to the trial court. Second, we know of no requirement that an appellee first do an *Edmunds* analysis for the trial court. We believe this is especially true where the trial court has not requested the parties to brief the issue. *See Edmunds,* 526 Pa. at 389–91, 586 A.2d at 895 (stating that it is important that litigants *brief* and analyze the heretofore stated factors). Third, if the Commonwealth believed that the suppression court should not have based its ruling in part upon a reading of the Pennsylvania Constitution, absent an *Edmunds* analysis, they should have objected. By not doing so, it is the Commonwealth, and not Rosenfelt, who has waived an issue—*i.e.*, the argument that an *Edmunds* analysis was not properly preserved in the court below. "To preserve an issue for review, a party must make a timely and specific objection at trial, and 'Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected.'" *Commonwealth v. Smith,* 414 Pa.Super. 208, 214, 606 A.2d 939, 942 (1992) (quoting *Noecker v. Johns–Manville Corp.,* 355 Pa.Super. 463, 471, 513 A.2d 1014, 1018 (1986) (citations omitted)), *allocatur denied,* 533 Pa. 624, 620 A.2d 490 (1993).

■ Rosenfelt, moreover, did preserve his claim arising under the Pennsylvania Constitution. In his pre-trial omnibus motion, Rosenfelt asserted that "[t]he evidence was obtained in violation of the defendant's United States Constitutional rights, or independently protected rights secured unto him by the Pennsylvania Constitution of by (sic) the Pa.R.Crim.P. ...." Omnibus motion 2/26/93 at (non-paginated) 2. This claim was repeated in oral arguments at the suppression hearing. N.T. 9/20/93 at 5. In addition, Judge Chiovero specifically ruled that the search of the trunk violated both the Federal and Pennsylvania Constitutions. *Id.* at 66. We will

not presume that a trial judge's decision, even if erroneous, is not the product of a full and thorough consideration of the pertinent facts and the applicable law.[13]

## B

Having decided that this issue was properly raised at the suppression hearing, we now turn to the substance of Rosenfelt's claim under the Pennsylvania Constitution.[14] In the case *sub judice,* was a warrantless search of the trunk permissible under the Pennsylvania Constitution because of the "automobile exception" to the warrant requirement?[15] Commonwealth cases which have addressed the automobile exception to the warrant requirement have ultimately relied, either solely or as an alternate rationale, upon federal case law and United States Supreme Court interpretation of the Fourth Amendment. *See, e.g., Commonwealth v. Rodriguez,* 526 Pa. 268, 272–74, 585 A.2d 988, 990 (1991) ("Thus, where there is probable cause related to the vehicle or its occupants, and where the exigencies of the situation compel an immediate search of the vehicle, a warrantless search of an automobile does not offend the Fourth Amendment."); *Commonwealth v. Milyak,* 508 Pa. 2, 5, 493 A.2d 1346, 1348 n. 3 (1985) ("We therefore do not address the applicability and effect of Article 1, § 8 of the Pennsylvania Constitution."); *Commonwealth v.*

**13.** Moreover, in criminal cases, where an ineffective assistance of counsel claim being raised in a future Post–Conviction Relief Act Petition is a distinct possibility, we may decide to address the merits of a claim, even when there is some argument that it has been waived. *Commonwealth v. Sees,* 529 Pa. 450, 451 n. 1, 605 A.2d 307, 308 n. 1 (1992). This is especially true where the trial court has already addressed the issue on its merits. *Id.*

**14.** We note with approval that the Defender Association of Philadelphia, Rosenfelt's counsel in this appeal, has provided this Court with a thorough *Edmunds* analysis.

**15.** "It is clear that there is no 'automobile exception' as such and that constitutional protections are applicable to searches and seizures of a person's car. *Coolidge v. New Hampshire,* 403 U.S. 443, 479–80, 91 S.Ct. 2022, 2044–45, 29 L.Ed.2d 564 (1971). Yet, in considering the reasonableness of a given search or seizure of an automobile, the need for a warrant is often excused by exigent circumstances." *Commonwealth v. Holzer,* 480 Pa. 93, 103, 389 A.2d 101, 106 (1978).

*Holzer,* 480 Pa. 93, 389 A.2d 101 (1978) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, *reh. denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971) in stating that the warrant requirement is excused when exigent circumstances exist); *Commonwealth v. Cockfield,* 431 Pa. 639, 644, 246 A.2d 381, 384 (1968) ("[A]n automobile is not *per se* unprotected by the warrant procedure of the Fourth Amendment."); *Commonwealth v. Kilgore,* 437 Pa.Super. 491, 494–96, 650 A.2d 462, 464 (1994) (quoting *Milyak,* 508 Pa. at 7–8, 493 A.2d at 1349, and *Commonwealth v. Timko,* 491 Pa. 32, 38, 417 A.2d 620, 623 (1980), in turn citing *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)); *Commonwealth v. Camacho,* 425 Pa.Super. 567, 576 n. 2, 625 A.2d 1242, 1247 n. 2 (1993) (noting that current federal law comes close to establishing a *per se* rule allowing a warrantless search of an automobile whenever the police have probable cause to search); *Commonwealth v. Pleummer,* 421 Pa.Super. 51, 617 A.2d 718 (1992) (applying the exception to the warrant requirement for automobiles first set forth in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) as applied in *Acevedo,* 500 U.S. at 579–81, 111 S.Ct. at 1991, 114 L.Ed.2d at 634, and *Ross,* 456 U.S. at 808–809, 102 S.Ct. at 2164–2165, 72 L.Ed.2d at 583–584); *Commonwealth v. Elliot,* 416 Pa.Super. 499, 611 A.2d 727 (1992) (relying on *Acevedo* for the proposition that a stationhouse warrantless search is constitutionally permissible), *allocatur denied,* 534 Pa. 646, 627 A.2d 177 (1993).

Traditionally, courts have upheld warrantless searches of automobiles because of (1) the exigency created by the automobile's inherent mobility, and (2) the owner and/or occupant's reduced expectation that a car's contents will remain private. *Milyak,* 508 Pa. at 7–9, 493 A.2d at 1349. The latter justification is grounded in the fact that much of the automobile's contents are in plain view, while the car itself is subject to numerous state regulations. *Id.* In *South Dakota v. Opperman,* Chief Justice Burger opined:

Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including

periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976).

On the federal level, the automobile exception to the warrant requirement has nearly developed into a *per se* rule. *Camacho,* 425 Pa.Super. at 576, 625 A.2d at 1247 n. 2; *see also* Wayne R. LaFave, 3 *Search and Seizure,* § 7.2(b) at 39 (2nd Ed.1987). That is, courts have been jettisoning the requirement of exigency. *See California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The federal automobile exception to the warrant requirement can therefore be based on the single premise that there is a diminished expectation of privacy in a car's contents. *See* LaFave, § 7.2(b) at 38.[16] Thus, even if the car in question is fully immobilized at the time of the search, the absence of a warrant might not be a barrier to an immediate police investigation. *See Elliot,* 416 Pa.Super. at 502–04, 611 A.2d at 729 ("Once the requirement of probable cause is satisfied, the exigencies regarding the inherent mobility of a vehicle and inadequate time to obtain a search warrant render a warrantless vehicle search proper even when the accused is in police custody." (citation omitted)); *see also* LaFave, § 7.2(b) at 9 n. 65 (1995 Pocket Part) (listing federal cases in which probable cause alone justifies warrantless vehicle searches).

Pennsylvania case law has recognized the development of this *per se* exception under federal law. *See Camacho,* 425 Pa.Super. at 576, 625 A.2d at 1247 n. 2. We have yet to state definitively, however, whether we similarly acknowledge such a *per se* exception to the warrant requirement acceptable under Article 1, Section 8 of the Pennsylvania Constitution.

**16.** Some courts, however, while not expressly requiring exigency, continue to author *ratio decidendi* which rely, in part, upon exigent circumstances. LaFave, § 7.2(b) at 38.

In *Commonwealth v. Ionata* our Supreme Court was evenly divided on this issue. 518 Pa. 472, 544 A.2d 917 (1988). Justice Flaherty, in writing the Opinion in Support of Affirmance, opined, "it cannot be said that searches of motor vehicles are, *per se,* exempt from warrant requirements." *Id.* at 476, 544 A.2d at 919. Specifically, Justice Flaherty wrote, "[S]ubject to certain carefully delineated exceptions ... exigent circumstances ... [are] necessary to justify a warrantless vehicle search." *Id.* at 477, 544 A.2d at 919–920 (citations omitted). In reasoning that the car's elemental impermanence does not create a *per se* exigent circumstance, Justice Flaherty relied upon both the United States and Pennsylvania Constitutions for support. *Id.*

In one of the two Opinions In Support Of Reversal, Justice McDermott hypothesized extending the exception to the warrant requirement, recognized when an officer, in good faith, relies upon a defective search warrant,[17] to situations where no warrant is ever procured. *Id.* at 479–81, 544 A.2d at 921. Justice Papadakos, writing the other Opinion In Support of Reversal, in which he was joined by Justice Larson, advocated something more akin to a *per se* rule that would allow police to search a vehicle based upon probable cause, even after the vehicle has been secured. *Id.* at 479–82, 544 A.2d at 921–922. Justice Papadakos stated that such an approach would "parallel[ ] the Federal Standard enunciated in *U.S. v. Johns,* (sic) 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985)...." *Id.* His opinion was specifically based upon the Pennsylvania Supreme Court's previous holding in *Milyak, supra. Id.* at 479–82, 544 A.2d at 921–922. As we have already stated, however, *Milyak* was decided solely upon Fourth Amendment grounds. *Milyak,* 508 Pa. at 5–7, 493 A.2d at 1348 n. 3.

## C

■ The question remains, therefore: is a warrantless vehicle search justified, under the Pennsylvania Constitution, ab-

---

**17.** *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The Pennsylvania Supreme Court rejected the good faith exception to the warrant requirement in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991).

sent any exigent circumstances other than the inherent mobile nature of the car itself? In order to answer this question, we must first develop an analysis faithful to the mandates of our Supreme Court in *Edmunds*.[18]

*Text*

The text of Article 1, Section 8 of the Pennsylvania Constitution provides the following:

**§ 8. Security from searches and seizures**

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

"Although the wording of the Pennsylvania Constitution is similar in language to the Fourth Amendment of the United States Constitution, we are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical." *Edmunds*, 526 Pa. at 391, 586 A.2d at 895–896 (footnote and citation omitted). Furthermore, "[a]s an independent sovereign interpreting its own constitution, which preceded the Federal Bill of Rights, no presumptive validity should be given to United States Supreme Court interpretations of the Federal Constitution." Leonard Sosnov, *Criminal Procedure Rights Under the Pennsylvania Constitution: Examining the Present and Exploring the Future*, 3 Widener J.Pub.L. 217, 230 (1993) (footnote omitted). At best, such interpretations of Federal Constitutional law have only persuasive value. *Id.* In emphasizing the requirement that Commonwealth courts independently analyze the Pennsylvania Constitution, our Supreme Court in *Edmunds* did not even include a review of United States Supreme Court precedent as a mandatory factor to be considered. *Id.* at 235.[19]

18. See § IIIA, *supra*.

19. Commentators and judges have encouraged state courts to analyze their own constitutions unencumbered by federal interpretation of the United States Constitution. *See, e.g.,* Samantha Pettine, *Fifth Annual*

*History*

We begin with the general observation that "Article I, Section 8, as interpreted by the Pennsylvania Supreme Court, reflects core values that serve to protect the individual's privacy and possessions." *Id.* at 245. "[T]he exclusionary rule in Pennsylvania has consistently served to bolster the twin aims of Article 1, Section 8; to-wit, the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Edmunds*, 526 Pa. at 398, 586 A.2d at 899 (citation omitted).

We have a long and noble history of protecting the rights of the individual in this Commonwealth. "[T]he right to be free from unreasonable searches and seizures contained in Art. 1, § 8, of the Pennsylvania Constitution is tied into the implicit right to privacy in this Commonwealth." *Commonwealth v. DeJohn*, 486 Pa. 32, 49, 403 A.2d 1283, 1291 (1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980). This right is interwoven into the fabric of protections accorded Commonwealth citizens by both Article 1, Section 8, and the common law. Seth F. Kreimer, *The Right to Privacy in the Pennsylvania Constitution*, 3 Widener J.Pub.L. 77, 83 (1993).

In *Commonwealth v. Edmunds*, our Supreme Court underscored the history and import of our constitution. *Id.* at 391–99, 586 A.2d at 896–899. The Pennsylvania Constitution was adopted ten years prior to its federal counterpart. *Id.* at 391–93, 586 A.2d at 896. More importantly, unlike the Fourth Amendment, our search and seizure provision is an organic, as opposed to appended, part of our constitution. *Id.* Revised in 1790, Article 1, Section 8 has remained virtually unchanged for two hundred years. *Id.* at 393–95, 586 A.2d at 897.

In *Edmunds*, the Supreme Court noted the following:

Moreover, as this Court has stated repeatedly in interpreting Article 1, Section 8, that provision is meant to embody a strong notion of privacy, carefully safeguarded in

*Issue on State Constitutional Law, Developments in State Constitutional Law: 1992–IX. Criminal Procedure: Search and Seizure, 24 Rutgers L.J. 1316 (1993); Sosnov, supra at n. 49.*

this Commonwealth for the past two centuries. As we stated in [*Commonwealth v.*] *Sell:* "the survival of language now employed in Article 1, Section 8 through over 200 years of profound change in other areas demonstrates that the paramount concern for privacy first adopted as part of our organic law in 1776 continues to enjoy the mandate of the people of this Commonwealth." [504 Pa. 46,] 65, 470 A.2d [457,] 467 [ (1983) ].

*Id.* (other citations omitted).

This does not mean that in every instance we will interpret Article 1, Section 8, as giving more protections to citizens than does the Fourth Amendment. *See Commonwealth v. Robinson,* 399 Pa.Super. 199, 582 A.2d 14 (1990) (holding a state constitutional analysis balancing an automobile passenger's privacy rights with a police officer's safety yields no different results than would a Federal Constitutional examination), *allocatur denied,* 528 Pa. 629, 598 A.2d 282 (1991). An examination of Commonwealth case-law, however, discloses a belief that our constitution affords our citizens a greater right to privacy than that found under the Federal Constitution. Sosnov, *supra* at 238.

In holding that the police must obtain a warrant based upon probable cause in order to examine bank records, our high court specifically disagreed with the Supreme Court's holding in *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), stating that *Miller* established a "dangerous precedent." *DeJohn,* 486 Pa. at 44, 403 A.2d at 1289. In *Sell,* the Pennsylvania Supreme Court held that a defendant charged with a possessory offense has automatic standing to challenge a search and seizure of the evidence, notwithstanding the United States Supreme Court's rejection of the "automatic standing" rule. *Sell,* 504 Pa. at 61–70, 470 A.2d at 466–469. While the High Court held in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), that under federal law a pen register is not a search implicating Fourth Amendment protection, the Pennsylvania Supreme Court held that, based upon Article 1, Section 8, pen registers cannot be utilized without an order based upon probable cause. *Com-*

*monwealth v. Melilli,* 521 Pa. 405, 412–14, 555 A.2d 1254, 1258 (1989). In *Commonwealth v. Johnston,* our Supreme Court held that, contrary to federal precedent, a canine sniff of a locker was indeed a search. 515 Pa. 454, 530 A.2d 74 (1987). Finally, in *Edmunds,* our Supreme Court rejected the good faith exception to the warrant requirement. *Edmunds,* 526 Pa. at 411–13, 586 A.2d at 906.

A review of Pennsylvania Supreme Court interpretation of Article 1, Section 8, reveals two precepts: (1) Article 1, Section 8 affords our citizens a greater expectation of privacy than does the Fourth Amendment; and (2) the primary purpose of the exclusionary rule in Pennsylvania is to ensure the citizenry's right to privacy. Sosnov, *supra* at 249.

### Related Case–Law From Other States

An examination of the law of other jurisdictions fails to find a consensus of opinion regarding a *per se* application of the automobile exception. Most states follow federal precedent in holding that an automobile, by its very nature, is itself a type of exigent circumstance. *See, e.g., State v. Werner,* 615 A.2d 1010 (R.I.1992); *State v. Tomah,* 586 A.2d 1267 (Me.1991); *Franklin v. State,* 587 So.2d 905 (Miss.1991); *State v. Isleib,* 319 N.C. 634, 356 S.E.2d 573 (1987). Other states have held, based upon an independent analysis of their own state constitutions, that absent exigent circumstances apart from the car's inherent mobility, a warrantless search is unreasonable. *See, e.g., State v. Miller,* 227 Conn. 363, 630 A.2d 1315 (1993); *People v. Edwards,* 836 P.2d 468 (Colo.1992); *State v. Larocco,* 794 P.2d 460 (Utah 1990); *State v. Patterson,* 112 Wash.2d 731, 774 P.2d 10 (1989).

States that have followed federal precedent have done so with only a passing nod to their own state constitutions. In *Werner,* the Rhode Island Supreme Court acknowledged that, previously, it had recognized that its state constitution had afforded citizens greater protection regarding automobile searches than that found under the Fourth Amendment. *Werner,* 615 A.2d at 1013. It did so to counterbalance federal uncertainty in the area of automobile searches. Believing that

Supreme Court decisions in *Ross, supra,* and *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (*per curiam*) brought stability to the law, the Rhode Island Supreme Court held that "exigency is no longer a requirement of the automobile exception." *Id.* at 1014.

Maine's highest court declared, "[T]he inherent mobility of a motor vehicle coupled with the reduced expectation of privacy associated with it justifies the warrantless search of that vehicle so long as the search is supported by probable cause." *Tomah,* 586 A.2d at 1269 (citations omitted). The court in *Tomah,* however, made no reference to the Maine Constitution, placing its holding primarily on the shoulders of federal case-law.

In *Isleib,* the North Carolina Supreme Court explicitly stated that "the inherent mobility of the automobile is itself the exigency." *Isleib,* 319 N.C. at 639, 356 S.E.2d at 577. It did so by "following the well-established rule that a search warrant is not required before a lawful search on probable cause of a motor vehicle in a public place may take place." *Id.* at 638, 356 S.E.2d at 577. North Carolina came to this conclusion primarily by way of federal precedent.

Mississippi similarly rested its decision ultimately upon a foundation of federal law. *Franklin, supra.* While the Mississippi Supreme Court in *Franklin* did cite to both federal and Mississippi case-law, a review of those cases reveals that they are either inapposite or are themselves based squarely upon a reading of federal case-law. *See Fleming v. State,* 502 So.2d 327, 329 (Miss.1987) (adopting the Supreme Court's holding in *Ross* ); *Patterson v. State,* 413 So.2d 1036, 1037 (Miss.1982) (reasoning that warrantless inventory searches are constitutional).

We find these cases unpersuasive. Courts such as the one in *Tomah* base their decisions solely on federal courts' application of the Fourth Amendment. As such, they provide no insight into whether or not state citizens might have a higher expectation of privacy under state law. The same year *Tomah* was decided, the Maine Supreme Court specifically de-

clined to extend greater protection from governmental intrusion under its state constitution than that required under the Federal Constitution. *State v. Tarantino*, 587 A.2d 1095 (Me.1991). Apart from its refusal to "announce the existence of a state exclusionary rule based on Article 1, Section 5 of the Maine Constitution," the Maine Supreme Court engaged in no independent state constitutional analysis of the automobile exception. *Id.* at 1098.

North Carolina's high court did mention its state constitution, but also only in the barest of references, when it concluded "that the law and reasoning applicable to the fourth amendment ... is also determinative of defendant's rights under the Constitution of North Carolina." *Isleib*, 319 N.C. at 640, 356 S.E.2d at 577. While we certainly respect the ability of North Carolina to interpret its own constitution, such assertions *sans* analysis are like road signs without directions; we may know where we are, but we do not know how we got there nor where to proceed.

The Rhode Island Supreme Court did take into account its own state constitution in analyzing the automobile exception to the warrant requirement. In doing so, however, it simply stated that a new stability brought to the law of search and seizure via recent United States Supreme Court precedent negated prior state precedent wherein state law recognized a greater right to privacy than did federal law. Stability, uniformity, and clarity are all hallmarks of jurisprudential husbandry. Certainty, however, is a poor reason for curtailing rights and freedoms. If the people of a state have a high expectation of privacy when looking to their own state constitution, that expectation should not be diminished simply because another sovereign's constitution is seen to provide more constancy.

More helpful to our analysis are the cases from states that have decided that their own constitutions provide greater protection from governmental searches than does the Federal Constitution. In *Miller*, the Connecticut Supreme Court undertook a thorough analysis of the automobile exception as it would apply under the Connecticut Constitution. 227 Conn. at

378–386, 630 A.2d at 1322–1326. In fact, the court in *Miller* rejected state precedent that, even though it "did not expressly disavow reliance on the Connecticut constitution," was decided based "on cases applying the [F]ourth [A]mendment." *Id.* at 378 n. 15, 630 A.2d at 1322 n. 15. The Connecticut court's decision not to rely on cases that did not fully analyze its state constitution, even if those cases could be read to imply, *sub silentio*, that the state and Federal Constitutions were co-extensive, is clearly more in keeping with the mandates of our Supreme Court in *Edmunds* than are the rationale of cases which simply follow federal precedent. *See* Sosnov, *supra* at 235 ("The principal importance of *Edmunds*, aside from being an important search and seizure decision, is that it mandates all Pennsylvania courts to independently analyze the Pennsylvania Constitution, free of any perceived constraints from United States Supreme Court decisions construing similar provisions of the Bill of Rights.")

In fact, the Connecticut Supreme Court's approach in *Miller* was nearly isomorphic with an *Edmunds* analysis. *See Miller*, 227 Conn. at 380–381, 630 A.2d at 1323–1324 (including, *inter alia*, a review of the history and text of the constitution, the decisions of sister states, and economic/sociological considerations). In its analysis, the *Miller* court expressed a strong "constitutional preference for warrants." *Id.* at 382–383, 630 A.2d at 1324–1325. Exceptions to the warrant requirement, it was stated, "derive primarily from acknowledged interests in protecting the safety of the police and preserving evidence." *Id.* at 383, 630 A.2d at 1325.

We similarly have recognized a strong preference for warrants. *See Commonwealth v. Grossman*, 521 Pa. 290, 297–98, 555 A.2d 896, 899 (1989) (holding that the requirement of specificity and particularity to be found in a warrant is more stringent than that of the Fourth Amendment); *see also Commonwealth v. Daniels*, 406 Pa.Super. 112, 118, 593 A.2d 895, 898 (stating that, under the Fourth Amendment, "[w]arrantless searches are *per se* unreasonable, subject only to a few, limited exceptions." (citation omitted)), *allocatur denied*, 529 Pa. 616, 600 A.2d 533 (1991). Our general rule is that,

under Article 1, Section 8, "a search or seizure is not reasonable unless it is conducted pursuant to a search warrant issued by a magistrate upon a showing of probable cause." *Commonwealth v. Kohl*, 532 Pa. 152, 166, 615 A.2d 308, 315 (1992).

Connecticut holds true to that same general principle. *Miller*, 227 Conn. at 384, 630 A.2d at 1325. In explaining the exigency exception, the *Miller* court opined:

> We tolerate the warrantless on-the-scene automobile search only because obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that that mobility creates. The balance between law enforcement interests and individuals' privacy interests thus tips in favor of law enforcement in the context of an on-the-scene automobile search. If the impracticability of obtaining a warrant no longer exists, however, our state constitutional preference for warrants regains its dominant place in that balance, and a warrant is required.

*Id.* at 384–385, 630 A.2d at 1325–1326 (citations and footnotes omitted). Recognizing that most states have adopted federal case-law as a matter of state constitutional law, the Connecticut Supreme Court was ultimately "not persuaded by [those] decisions," as they relied "primarily on the proposition that any justification for conducting a warrantless on-the-scene automobile search is sufficient justification for a search" after the vehicle has been secured. *Id.* at 385 n. 19, 630 A.2d at 1326 n. 19.

Other states, while not engaging in as thorough analysis as Connecticut, have similarly held that both probable cause as well as actual exigent circumstances are required to justify a warrantless vehicle search. *See Edwards*, 836 P.2d at 471–472 (recognizing that under the Fourth Amendment exigent circumstances are unnecessary, while the Colorado Constitution requires probable cause plus "a practical risk of the vehicle's unavailability if the search is postponed until a search warrant is obtained."); *Larocco*, 794 P.2d at 470–471 ("[I]t is the state's burden to show that both probable cause and exigent circumstances were present at the time of the search."); *State v. Kock*, 302 Or. 29, 725 P.2d 1285 (1986) (holding that a search

of a parked, immobile car requires a warrant or proof that exigency other than the vehicle's inherent mobility existed at the time). In *State v. Patterson, supra*, the Washington Supreme Court balanced the privacy interests of its state's citizens with the requirements of police investigation as well as public safety. There, the court concluded that "[i]f exigencies in addition to potential mobility exist, they will justify a warrantless search." *Patterson*, 112 Wash.2d at 735, 774 P.2d at 12. The court noted that the traditional justifications for a warrantless search are not present when the police "approach a parked, immobile, unoccupied, secured vehicle." *Id.*

Looking to the case-law of our sister states, we conclude that when the privacy interests of citizens are seriously taken into account, a warrant becomes mandatory to search a vehicle, absent exigent circumstances apart from the vehicle's potential mobility.

## Policy Considerations

Guiding our decision is our concern that effective police investigation not be improperly curtailed, nor the safety of officers and citizens be carelessly imperiled. We do not intend to, in the words of Justice McDermott, create a "surreal situation, where the honest zeal of police officers counts for nothing, however loaded with contraband may be the killer, terrorist, drug dealer, etc," where the police are penalized "for their success and the vampire walks." *Ionata*, 518 Pa. at 479, 544 A.2d at 921 (McDermott, J., Opinion in Support of Reversal).

Such concerns have to be balanced, however, with the heightened expectation of privacy our citizens enjoy under the Pennsylvania Constitution. As our Supreme Court has stated:

We are mindful that government has a compelling interest in eliminating the flow of illegal drugs into our society, and we do not seek to frustrate the effort to rid society of this scourge. But all things are not permissible even in the pursuit of a compelling state interest. The Constitution does not cease to exist merely because the government's

interest is compelling. A police state does not arise whenever crime gets out of hand.

*Commonwealth v. Martin*, 534 Pa. 136, 144, 626 A.2d 556, 561 (1993). While our rights as citizens are not absolute, they are not to be abrogated absolutely.

We agree with our sister states who have weighed the right of privacy against the need to secure evidence and the safety of citizens and constabulary. Once a car is in control of the police, or, as in the case *sub judice*, parole officers, the scales tip in favor of the individual's expectation of privacy. We are in full accord with the Supreme Court of Washington when it stated, "Pursuant to the unique language of our own constitution, we have carefully restricted automobile searches to balance an individual's privacy interest against a real state and societal need to search; mere convenience is not enough." *Patterson*, 112 Wash.2d at 734, 774 P.2d at 12 (citations omitted).

We recognize that the United States Supreme Court has allowed warrantless automobile searches based on the independent and alternate reason that a person's expectation of privacy for objects placed in a car is diminished. *See supra,* § III–B. Moreover, the hope that others will not be privy to that which is stored in a trunk is certainly not as strong as the belief that the government will not pry into the secrets squirreled away in the bedroom. *See, e.g. Commonwealth v. Peterson*, 535 Pa. 492, 499, 636 A.2d 615, 618 (1993) (stating that there is a "substantial expectation of privacy in vested residential premises." (citation omitted)); *Holzer*, 480 Pa. at 105–06, 389 A.2d at 106 ("[O]ne's expectation of privacy [in a car] is significantly less than that relating to one's home or office." (citation omitted)). Moreover, "the right [of privacy] is not an unqualified one; it must be balanced against weighty competing private and state interests." *Stenger v. Lehigh Valley Hospital Center*, 530 Pa. 426, 434, 609 A.2d 796, 800 (1992) (citation omitted).

As we have already established, however, this right to privacy is more expansive under Article 1, Section 8, than it is

under the Fourth Amendment. *Commonwealth v. Parker,* 422 Pa.Super. 393, 399–401, 619 A.2d 735, 738 (1993). We therefore look to see whether a person's expectation of privacy is legitimate or reasonable. *Commonwealth v. Brundidge,* 533 Pa. 167, 620 A.2d 1115 (1993). "The resolution of this issue depends upon the totality of the circumstances and ultimately rests upon a balancing of the societal interests involved." *Peterson,* 535 Pa. at 501, 636 A.2d at 619 (citations omitted).

The first reason courts have given for the reduced expectation of privacy is because, subjectively, people do not expect that things placed in the car will remain shielded from the views of others. This may be true for all objects in plain view, but is not necessarily applicable to objects placed in the glove compartment, under the seat, or inside a trunk. LaFave, § 7.2b at 33. We agree with the following commentator:

> There are probably few Americans who have not at one time or another used their cars for storage, albeit unwisely. All personal effects so stored are entitled to [F]ourth [A]mendment protection; [C]onstitutional guarantees are not reserved only for valuable possessions carefully protected by their owners. Most Americans view the automobile as more than merely transportation.

*Id.* at 33–34 (quoting Katz, *Automobile Searches and Diminished Expectations in the Warrant Clause,* 19 Am.Crim. L.Rev. 557, 570–572 (1982)).

Similarly, we find unpersuasive the reasoning that a driver's or occupant's expectation of privacy in the car is diminished because cars are highly regulated. "A legitimate interest in securing compliance with safety and traffic regulations should not be used to justify a reduced expectation of privacy." *Id.* A broken headlight will not, by itself, lead to a search of the trunk. Homes may come under zoning, occupancy, fire and safety rules and regulations. These do not, in and of themselves, increase our anticipation that the police can enter them without a warrant.

Along with our citizenry's great expectation of privacy, we base our decision on the Commonwealth's strong preference

for warrants. We recognize that the exigencies of law enforcement prohibit us from making this a universal mandate. Yet, when the exigencies are no longer there, we require a neutral and detached magistrate to decide whether a person's home, car, and possessions should be subject to governmental intrusion. We want police officers, dedicated to law enforcement, to be zealous in their vigilance. In a free society, however, government circumspection must have its limits. To this end, "[t]he Fourth Amendment is a restraint on executive power." *See Acevedo*, 500 U.S. at 586, 111 S.Ct. at 1994, 114 L.Ed.2d at 638 (Stevens, J., dissenting). As Justice Stevens pointed out in dissent, Supreme Court opinions authored by Justice Jackson, written after he served as special prosecutor at the Nuremberg War Crime trials, "recognized the importance of this restraint as a bulwark against police practices that prevail in totalitarian regimes." *Id.* (citation omitted). Justice Stevens quoted Justice Jackson's explanation:

> The point of the Fourth Amendment, which is not often grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

*Id.* (quoting *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–69, 92 L.Ed. 436, 439–41 (1948)).

In this instance, Parole Officer Henry would have been only minimally burdened in securing a warrant. Rosenfelt was in custody. The car was in the control of the parole officers. There was no risk that it would have been driven off by a third party. The officers were in no danger. In fact, Barringer did not discover the drug paraphernalia inside the car until after he was driving it and Rosenfelt was placed in custody. Thus, any "exigency" which occurred arose after the parole officers were in full control of the vehicle.

Clearly, the only burden to Henry would have been a minor inconvenience in securing the warrant. To use the words of

Justice Marshall, writing in dissent, "only the minimal interest in avoiding the inconvenience of obtaining a warrant weighs in on the side of law enforcement." *Illinois v. Rodriguez,* 497 U.S. 177, 192, 110 S.Ct. 2793, 2803, 111 L.Ed.2d 148, 164 (1990) (Marshall, J., dissenting).

Finally, we note that in recent years we have witnessed the diminishment of the right of privacy under the Federal Constitution. We are alarmed by recent news that the 104th United States Congress voted down "a measure that repeated, verbatim, the language of the Fourth Amendment." Katharine Q. Seelye, *At the Bar: A Congress with Few Lawyers is a Congress with Different Inclinations,* N.Y. Times, April 7, 1995, at A33. This is seemingly being done in order to make law enforcement more efficacious. "[T]he mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment." *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290, 301 (1978) (citation committed). Nor can it be an excuse to curtail Article 1, Section 8, of the Pennsylvania Constitution.

## IV

We hold that the suppression court was correct in ruling that the evidence found in the trunk of the car should have been suppressed.[20] Absent a clear policy or an agreement between a parolee and the parole board, a parolee does not have a diminished expectation of privacy. This does not mean, however, that parole officers cannot search based upon probable cause. In this instance, based upon her observation of the contents of the passenger compartment and her reasonable inferences drawn therefrom, Officer Henry had probable cause to search the trunk. Absent exigent circumstance apart from the car's inherent mobility, however, Henry should have first secured a warrant before opening the trunk. Because

20. Because we agree that all of the evidence in the trunk should have been suppressed, we need not decide whether the bags in the trunk could have been searched if Henry had been justified in looking into the trunk without a warrant.

the car was in the control and dominion of the officers, and no discernible exigency was present, the warrantless search violated Article 1, Section 8, of the Pennsylvania Constitution.

Order affirmed.

WIEAND, Judge, dissenting:

The majority holds that, pursuant to Article I, Section 8, of the Pennsylvania Constitution, "a warrant becomes mandatory to search a vehicle, absent exigent circumstances apart from the vehicle's potential mobility." Although I understand the majority's reasoning, I am of the opinion that the decision of the Pennsylvania Supreme Court in *Commonwealth v. Baker*, 518 Pa. 145, 541 A.2d 1381 (1988), *overruled on other grounds in Commonwealth v. Rosario*, 538 Pa. 400, 648 A.2d 1172 (1994), compels a contrary result. In *Baker*, the Supreme Court analyzed the lawfulness of a warrantless search of an automobile under both the Fourth Amendment and Article I, Section 8, of the Pennsylvania Constitution. In so doing, the Court reasoned as follows:

It is well established that automobiles are not per se unprotected by the warrant requirements of the Fourth Amendment, and of Art. I, § 8 of the Pennsylvania Constitution. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). Nevertheless, certain exigencies may render the obtaining of a warrant not reasonably practicable under the circumstances of a given case, and, when that occurs, vehicle searches conducted without warrants have been deemed proper where probable cause was present. See *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985); *Commonwealth v. Holzer, supra; Commonwealth v. Lewis*, 442 Pa. 98, 275 A.2d 51 (1971) (warrantless search proper where probable cause exists to believe evidence of crime is concealed in a vehicle lawfully stopped by police). The instant case is clearly one where, based upon these criteria, a search without a warrant was proper.

Police had received information from an informant, whose reliability was known, that appellant assaulted an individual in an alley by threatening the individual with a gun, and

that appellant departed from the scene in a particular automobile. Within minutes, police located that automobile and placed appellant under a brief period of surveillance. Soon thereafter appellant was stopped as he attempted to drive away. Thus, police clearly had probable cause to believe that appellant was in possession of the gun seen by the informant, when, just thirty minutes after the incident in the alley, they searched appellant's vehicle.

This is not a case where police knew hours in advance that a particular vehicle carrying evidence of crime would be parked in a particular locale, such that it would have been reasonably practicable to obtain a search warrant before encountering the vehicle to be searched. Rather, the instant search was conducted when police stopped a moving vehicle just thirty minutes after a reported crime. Inasmuch as the requirement of probable cause was satisfied, the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search proper. See *Commonwealth v. Milyak, supra; Commonwealth v. Holzer, supra; Commonwealth v. Lewis, supra.* See also *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (search of suddenly encountered and lawfully stopped vehicle upheld where probable cause was present to believe contraband was concealed within).

Of course, an alternative to an immediate search in the present case would have been to immobilize the vehicle until a warrant could be obtained. As noted, however, in *Commonwealth v. Milyak,* 508 Pa. at 9–10, 493 A.2d at 1349, it is not clear that the intrusion arising from immobilization of an automobile is less than the intrusion of searching it. Thus, immobilization has been held to be an alternative, not a requirement. *Id.,* 508 Pa. at 11, 493 A.2d at 1351. In short, this case presents a typical scenario where exigent circumstances made it not reasonably practicable to obtain a warrant prior to stopping a vehicle that contained evidence of crime. Since probable cause to search the vehicle was present, a search warrant was not required, and, thus, the

Superior Court properly held the revolver seized during the search to be admissible as evidence.

*Commonwealth v. Baker, supra* at 148–150, 541 A.2d at 1383–1384 (footnote omitted). Compare: *Commonwealth v. Ionata,* 518 Pa. 472, 544 A.2d 917 (1988) (Opinion in Support of Affirmance by Flaherty, J.) (warrantless search of vehicle not justified where, in advance of search, police had obtained warrant to search defendant's person and apartment, but had neglected to seek authorization for search of defendant's vehicle).

After careful review, I am satisfied that this is not a case where the parole officers had pre-existing probable cause and an opportunity to obtain a warrant prior to stopping appellee's vehicle and arresting him for violating his parole. Rather, probable cause to search the vehicle arose after the stop when drug paraphernalia was observed in plain view. Although the parole officers could have immobilized appellee's vehicle and obtained a search warrant without any risk of the vehicle being driven away (they had custody of both appellee and the vehicle), the Supreme Court has made clear that this was only an option and not a requirement under either the Fourth Amendment or Article I, Section 8, of the Pennsylvania Constitution. See: *Commonwealth v. Baker, supra.* I would hold, therefore, that the parole officers did not violate appellee's constitutional rights by searching his vehicle without first obtaining a warrant. For this reason, I would reverse the order of the trial court which suppressed the evidence seized from the trunk of appellee's vehicle. In that the majority has decided otherwise, I respectfully dissent.