535 A.2d 600

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David Gregory WEISENTHAL and Kathleen Jean Dickelman.**

Supreme Court of Pennsylvania.

Argued April 17, 1986.

Reargued Nov. 11, 1987.

Decided Jan. 12, 1988.

Mary MacNeil Killinger, Chief, Appeals Div., Joseph J. Hylan, Asst. Dist. Atty., Norristown, for appellant.

Theodore Simon, Philadelphia, Francis Recchuiti, Norristown, for Weisenthal.

William J. Honig, Norristown, for Dickelman.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM:

The Court being evenly divided as to whether to render a decision on the merits, the appeal is hereby dismissed.

NIX, C.J., and FLAHERTY and ZAPPALA, JJ., would dismiss the appeal as having been improvidently granted.

McDERMOTT, J., files a dissenting opinion.

PAPADAKOS, J., files a dissenting opinion.

LARSEN, J., dissents.

McDERMOTT, Justice, dissenting.

Since the suppression judge in this case found that the police acted without probable cause he automatically ordered the exclusion of the two bales of marijuana. Our system of jurisprudence has labored under this reactive application of the exclusionary rule since *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). However, the United States Supreme Court has augured a significant shift in its view of the exclusionary rule as an automatic remedy for Fourth Amendment violations.

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), rehearing denied 468 U.S. 1250, 105 S.Ct. 52, 82 L.Ed.2d 942 (1984), the Court, per Mr. Justice White, recognized that the exclusionary rule is *not* a constitutionally mandated remedy, and unequivocally stated that "[w]hether the exclusionary sanction is appropriately imposed in a particular case ... is an issue separate from the question whether the Fourth Amendment right of the party

seeking to invoke the rule were violated by police conduct'." *Id.* 468 U.S. at 906, 104 S.Ct. at 3412, citing *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983). The Court went on to say that recent changes in the law "forcefully suggest that the exclusionary rule be more generally modified to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment." *Leon, supra* 468 U.S. at 909, 104 S.Ct. at 3413, citing *Illinois v. Gates,* 462 U.S. at 255, 103 S.Ct. at 2341 (White, J. concurring in judgment). *See also, Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

*Leon* signals a halt in the headlong plunge into the delusion that we can prevent crime by proving to criminals that we are perfect; an idea savored among those who believe one offense is as good as another; a killer freed is a victory in teaching police to cross "t's" and dot "i's". *Leon* teaches that improperly obtained evidence is not, *eo ipso,* suppressible as a constitutional right; that reasonable honest mistakes are not prizes awarded to plain, flat-out criminals.

Although both *Leon* and *Sheppard* involved police acting in good faith reliance upon a defective warrant the analysis applied by the Court could ultimately extend to other good faith efforts of police. This approach would by far be the most reasonable since much of what appears as an inexplicable and sometimes degrading paradox would be obviated by distinguishing between actual misconduct and the mistakes of honest men. In this case one with bales of poisonous and illegal contraband escapes sanction because the police acted without the requisite formal authority of the occasion. Two wrongs, usually of very unequal weight, should never equal a right to escape when caught *flagrante delictu.*

In this case the most that can be said about the police is that they jumped the gun. However, given the exigency of the situation, where the failure of the police to act immedi-

ately would have meant that the automobile carrying the contraband would have continued its illegal journey, the police had little choice.

One of the primary purposes of the exclusionary rule is to deter future police misconduct, and one of the crucial inquiries in evaluating the effect of the exclusionary rule as a remedy is whether it will accomplish such deterrence. Experience, however, has proven more often that dangerous criminals escape than that police have been made perfect on the killing ground. To apply the exclusionary rule in a situation like the present will not deter misconduct, it will only deter conscientious police work which often depends on the reasonable suspicions of the officer on the scene; reasonable suspicions on which, all too often, our very lives depend. Indeed, to apply the rule in this case breeds a disrespect and contempt for reason so profound as to make the law seem an ineffectual fool.

I would hold that exclusion is not an appropriate remedy under the fact of this case, and therefore I dissent from the decision to affirm the Superior Court.

PAPADAKOS, Justice, dissenting.

I dissent to the dismissal of the Petition for Allowance of Appeal as Improvidently Granted. The police certainly had a right to be where they were in a public setting keeping watch on the activities of the Appellees in a public parking area. The police saw a transfer of large bales of substances which they reasonably believed to be marijuana. They moved in and seized 119 pounds of marijuana and placed the Appellees under arrest. The mere fact that a former customs agent and DEA official testified that these bales were not packaged as he knew large bales of marijuana to be packaged does not, in my view, reduce the opinion of the arresting officers to a bad faith exercise.

This case simply represents the seizure of what the police reasonably believed to be marijuana. They were right and the expert was wrong! The bales weighed 119 pounds,

hardly invisible even to the casual passerby. This evidence should not have been suppressed.