544 A.2d 917

COMMONWEALTH of Pennsylvania, Appellant,

v.

Humberto IONATA, a/k/a Albert Ionata, Appellee.

Supreme Court of Pennsylvania.

Argued Nov. 13, 1987.

Decided July 22, 1988.

Sandra L. Elias, Chief, Appeals Div., Ann Osborne, Asst. Dist. Atty., Media, for appellant.

Timothy J. Gorbey, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM.

The opinion of the Court being equally divided, the order of the Superior Court is affirmed.

FLAHERTY, J., files an opinion in support of affirmance in which NIX, C.J., and ZAPPALA, J., join.

McDERMOTT and PAPADAKOS, JJ., file opinions in support of reversal in which LARSEN, J., joins.

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

This is an appeal by the Commonwealth from a per curiam order and memorandum opinion of the Superior

Court, 356 Pa.Super. 588, 512 A.2d 51, which affirmed an order of the Court of Common Pleas of Delaware County granting a motion to suppress evidence in connection with narcotics offenses charged against the appellee, Humberto Ionata. The sole issue presented is whether items obtained by police during the search of an automobile driven by appellee were properly suppressed. The relevant facts are the following.

On September 7, 1984, at approximately 5:00 p.m., Detective Ceccola of the Upper Darby Police Narcotics Unit met with Cindy Wood after having received a phone call from Wood professing knowledge as to illegal drug dealing. Wood stated that she had received medical treatment for injuries inflicted by her boyfriend, the appellee herein, and that the injuries were inflicted earlier that day in the course of an argument relating to appellee's involvement with illegal drugs. In addition, Wood reported that appellee had been dealing in drugs for the past year at the apartment where she and appellee resided, and that, following the argument that day, appellee departed from the apartment to purchase drugs. Detective Ceccola was told by Wood that appellee was driving a certain automobile that Wood purportedly owned, and that appellee was expected to be returning with the drugs in several hours. Wood also told Ceccola that, following her argument with appellee, she had discarded some of appellee's drugs and related paraphernalia in the apartment's trash receptacle. This information was of timely importance to Detective Ceccola because, just two days prior, on September 5, 1984, Ceccola had received a phone call from a confidential informant of known reliability indicating that the informant had purchased drugs from appellee at the apartment in question.

After talking with Wood, Detective Ceccola immediately applied for and received a search warrant, at approximately 6:00 p.m., covering the person of appellee and the apartment. No application was made for a warrant to search the automobile that appellee was known to be driving, however,

despite its known role in transporting the drugs that were being purchased.

Later, around 7:00 p.m. that same day, Detective Ceccola stationed two plainclothes police officers in an unmarked vehicle at the end of the dead-end street where the apartment was located, such that appellee would have to pass by on the way back to the apartment. Ceccola and Wood then went to the apartment where they waited more than two hours for appellee's return, and, ultimately, the plainclothes officers called Ceccola by radio to inform him that appellee had arrived. Approximately twenty minutes before that arrival, Wood had mentioned to Ceccola the exact location in the automobile where appellee usually stored drugs, namely, under the hood. As soon as Ceccola was alerted to appellee's arrival, he left the apartment and met the plainclothes officers in the street. Appellee had already parked and stepped out of the automobile by the time the officers approached him. The officers noticed that another individual, unknown to them at the time but later identified as a security guard for the apartment building, was a passenger in the automobile. That individual exited from the automobile at the request of the officers.

Next, Detective Ceccola looked through the open driver's door of the automobile and noticed a brown bag and a small brown box on the front seat. The box, which was approximately five inches by eight inches in size, had a lid which was closed. Ceccola was not able to determine from that vantage point what was in either the bag or the box, but he noticed glassine bags protruding from the lid of the box. A search of the automobile was then conducted. It was discovered that the box on the front seat contained empty glassine bags, of a type sometimes used for packaging methamphetamines, and a scale of a sort commonly used for weighing drugs. The bag on the front seat contained fifteen hypodermic syringes. In addition, bags of methamphetamines were found under the hood of the automobile. At the conclusion of the search, appellee was placed under arrest.

The Commonwealth argues in the instant appeal that, because appellee concedes that ample probable cause existed to have obtained a warrant to search the automobile, the search was permissible even in the absence of a warrant. Specifically, it is asserted that exigent circumstances are never necessary to justify a warrantless search of a motor vehicle in Pennsylvania. Such an assertion is plainly without merit, in view of well established constitutional principles governing vehicle searches.

In clarification of the applicable analytical framework, it is to be noted that the present case does not fall within the bounds of traditionally recognized exceptions to search warrant requirements. The case does not involve a search incident to an arrest, see *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2680, 69 L.Ed.2d 768 (1981), since appellee was not arrested until after a search had been conducted. Also, this is not a case involving a search of a vehicle that had been suddenly encountered and stopped by police. See *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Commonwealth v. Lewis,* 442 Pa. 98, 275 A.2d 51 (1971) (vehicle suddenly encountered and lawfully stopped by police would have been a proper subject for warrantless search if probable cause had existed to believe evidence of crime was concealed therein). Nor is this a case where identifiable contraband was in plain view in the vehicle, *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346 (1985), or where other purported exceptions to warrant requirements appear applicable.

■ While certain exceptions to constitutional requirements of obtaining warrants have been recognized in the realm of vehicle searches, it cannot be said that searches of motor vehicles are, *per se,* exempt from warrant requirements. In *Commonwealth v. Milyak,* 508 Pa. at 7–8, 493 A.2d at 1349, this Court stated,

While searches and seizures conducted outside the judicial process, without prior approval by a magistrate, are generally unreasonable under the Fourth Amendment ... there is an established departure from the warrant re-

quirement for *certain* automobile searches based on the inherent mobility of vehicles, with the consequent *practical problems in obtaining a warrant* prior to infringing a legitimate expectation of privacy....

(Emphasis added). See also *Commonwealth v. Cockfield,* 431 Pa. 639, 644, 246 A.2d 381, 384 (1968) ("[A]n automobile is not *per se* unprotected by the warrant procedure of the Fourth Amendment. Although it *sometimes* may be reasonable to search a movable vehicle without a warrant, the movability of the area to be searched is not alone a sufficiently 'exigent circumstance' to justify a warrantless search."); Pennsylvania Constitution, Art. I, § 8. Accord *Commonwealth v. Davis,* 270 Pa.Super. 202, 411 A.2d 250 (1979).

■ Thus, subject to certain carefully delineated exceptions, supra, the presence of exigent circumstances, which create practical problems in obtaining a warrant prior to infringing a legitimate expectation of privacy, is necessary to justify a warrantless vehicle search. See *Commonwealth v. Cockfield,* 431 Pa. at 643, 246 A.2d at 383 ("Whenever *practicable,* the police must obtain advance judicial approval of searches and seizures through warrant procedure....") (emphasis added); *Commonwealth v. Holzer,* 480 Pa. 93, 103, 389 A.2d 101, 106 (1978) (Under the Fourth Amendment to the United States Constitution, and under Art. I, § 8 of the Pennsylvania Constitution, "[i]t is clear that there is no 'automobile exception' as such and that constitutional protections are applicable to searches and seizures of a person's car.... Yet, in considering the reasonableness of a given search or seizure of an automobile, the need for a warrant is often excused by exigent circumstances.")

The Commonwealth argues that, if, as we hold, exigent circumstances are indeed required as a basis for a warrantless vehicle search, the instant search was one conducted pursuant to such circumstances. In this regard, it is claimed that probable cause to search the automobile did not arise until twenty minutes before appellee returned to the apartment, because that was when Wood told Ceccola

the exact location, under the hood, where drugs were often stored. Further, the Commonwealth contends that the presence of a passenger in the automobile contributed to the exigencies presented.

■ The burden is upon the Commonwealth to establish that exigent circumstances were present, such that it was not reasonably practicable to obtain a search warrant. See Pa.R.Crim.P. 323(h) (Commonwealth has the burden of establishing that challenged evidence was not obtained in violation of a defendant's rights). The courts below held that the Commonwealth failed to meet that burden. We agree.

At least four hours prior to the instant search the police had information, supplied by Wood, that appellee would be transporting drugs in a particular automobile when he returned to the apartment. Information supplied by Wood later stating the location in the automobile where drugs would likely be located was cumulative, and, although helpful to the police in conducting the search, it did not alter the fact that probable cause had already existed for a number of hours. Similarly, the presence of a passenger in the automobile added nothing to the presence of probable cause, and, further, the Commonwealth introduced no evidence at the suppression hearing to the effect that the passenger was in any way involved with appellee or with the contraband, or that the presence of the passenger was viewed by the officers as an inducement to conduct a warrantless search.

Upon consideration of all the facts relevant to this case, it appears that officers legitimately expected that, at some time, appellee would be moving drugs from the automobile to the apartment where they knew appellee engaged in drug dealing. In their zeal to make an arrest, however, the officers approached appellee as soon as he had exited from his parked vehicle, but before appellee had been given adequate opportunity to move any of the drugs onto his person or into his apartment, i.e., to the areas covered by the search warrant. A search warrant for the vehicle would have been obtainable at the same time a warrant was

secured to search the apartment and person of appellee. By neglecting to obtain a warrant covering the vehicle, and by approaching appellee immediately upon his arrival, the officers inexplicably took the risk that appellee would at least temporarily have kept the drugs in the automobile, and, thus, they took the risk that appellee would not yet have moved any of the contraband into areas covered by the search warrant.

In short, this case does not involve a search conducted under exigent circumstances; rather, it involves a search undertaken after the police had, through oversight or lack of planning, failed to obtain a warrant to search a vehicle that they knew hours in advance would be parked at appellee's apartment after it had been used to transport contraband. Indeed, it would be difficult to conceive of a case where the circumstances surrounding a challenged search would be more clearly non-exigent than those presented here. Thus, inasmuch as obtaining a warrant would certainly have been practicable, suppression of the items seized in the instant search was entirely proper.

This opinion joined by NIX, C.J., and ZAPPALA, J.

## OPINION IN SUPPORT OF REVERSAL

McDERMOTT, Justice.

To my mind this decision trivializes the fourth amendment. The police had a warrant to search the person and apartment of the appellant. When he arrived at his residence the police, as the majority notes, in "zeal" searched his car and found hidden under the hood the drugs, needles, scales and glassine bags. Because the warrant did not cover the automobile, if indeed the police needed one under the circumstances, all is suppressed. The officers that night lacked the icy abstract prescience of this Court, and in honest "zeal" merely did what they could. The majority now penalizes them for their success and the vampire walks.

The Supreme Court of the United States, holding that the exclusionary rule is not a constitutional requirement, has

offered a reasonable escape from such stilted, abstract, reliance on form. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This Court, however, as it did in *Commonwealth v. Weisenthal,* 517 Pa. 241, 535 A.2d 600 (1988), once again demonstrates its reluctance to take advantage of that escape. As a consequence, we will remain mired in our present surreal situation, where the honest zeal of police officers counts for nothing, however loaded with contraband may be the killer, terrorist, drug dealer, etc.

LARSEN, J., joins in this opinion.

### OPINION IN SUPPORT OF REVERSAL

PAPADAKOS, Justice.

Today, those in support of affirmance suppress drugs seized as part of an automobile search and in so doing overrule our own precedent. There is no question that Cindy Wood, the informant in this case, and estranged girlfriend of Appellee, told the police that Appellee was a drug dealer, and that he was using *her* car to pick up and transport drugs. During the police investigation of this matter, she even told the police that he hides the drugs under the car hood.

Based upon this information, the police obtained a search warrant for Appellee's person and his apartment. The police continued their investigation by waiting for Appellee to return with Wood's car. The police watched Appellee park the car and exit from it. Seconds after he exited the car, the police approached Appellee. In fact, the police were so quick in accosting Appellee that a passenger was still in the car. The police immediately asked the passenger to get out of the automobile and then conducted the subject warrantless search which resulted in the finding of a cache of methamphetamines under the hood of the automobile. The affirmers rule that the search of the vehicle under these circumstances does not fall squarely into one of the traditionally recognized exceptions for warrantless searches, and therefore the seized drugs must be sup-

pressed. We disagree with this conclusion and would reverse the lower courts.

We recently held that where the police have independent probable cause to believe that a vehicle has been used in furtherance of the commission of a felony, or that evidence of a crime is concealed within, they may conduct a warrantless search of the automobile. *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346 (1985). In *Milyak*, an informant described to police a van that had been used in the perpetration of a felony and that inside the van they would find stolen televisions. Two and one-half hours after this information was given to the police, a van matching the informant's description was spotted pulling into a restaurant. The passengers exited the van and entered the restaurant. At that point, the police looked inside the van and saw televisions with tags on them indicating that they had come from the hardware store in question. The police spotted a crowbar in the van. We held that independent probable cause existed to believe that the van had been used in the perpetration of a felony because it matched a description given by a witness, was found within a mile of the burglary, and because the police observed items in the van confirming the connection of the van to the burglary. Accordingly, we affirmed legitimacy of the search of the van, even though the occupants of the van had exited.

Our holding in *Milyak* also parallels the Federal Standard enunciated in *U.S. v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), which similarly allows the police to conduct the warrantless search of a vehicle if the police have independent probable cause to believe that the vehicle contains contraband. Such is clearly the case here.

Cindy Wood supplied all the information the police needed to satisfy the police's probable cause requirement for search at that time. She gave them an exact description, told them that Appellee was using it to pick up and transport illegal drugs, and that he usually hides them under the hood. All this was learned during a police investigation.

The police and Wood waited for Appellee to return with the car and it was after Appellee exited the car that the

police stopped him and looked in the car. At that point, they saw in plain view glassine bags protruding from the lid of a box. It is not uncommon that these bags are used for packaging drugs. At this point the police had independent probable cause to believe that the car had been used in the perpetration of a felony. As in *Milyak*, the car exactly matched the description given by the informant, was found in a place which bolstered the informant's story, and the police saw evidence in plain view confirming the connection of the van to the transportation of illegal drugs.

Under these circumstances, we have no trouble in concluding that *Milyak* controls and that the suppression of the drugs confiscated by the police was improper. Finally, we note with some incredulity that the author of *Milyak* who spoke so eloquently for this Court, now summarily distinguishes that case to reach the unwarranted result endorsed by the affirmers today. For the reasons already stated, we would reverse the orders of the Superior Court and the trial court.

LARSEN, J., joins this opinion in support of reversal.